*14 On March 31st, 1879, the Supreme Court affirmed the decision •of the court below in the following opinion by'
Paxson, J.
This cause comes up in sections. This is the third time it has been here, the parties differing in each instance, the cause of action, however, substantially the same. In Thompson vs. the Commonwealth, 31 P. F. Sm. 314, we decided that the commissioners had. no standing to entitle them to a mandamus, for the reason that the Act of 9 June, 1874, Pam L. 306, repealed the third section of the Act of 7 April, 1869, and the entire supplement of 27 Feb., 1872, under which this road was opened and that the office of special commissioners fell with it. We also held that this repeal did not affect the contracts of those who had advanced money, on the pledge of the fund appropriated to the payment of their certificates, and that the duties of the commissioner's were •devolved upon the township supervisors.
The next case was an attempt on the part of the certificate holders to compel by mandamus the application of the county treasurer and the township treasurer of the funds in their hands collected from road taxes, to the payment of said certificates as required by the Act of 1872. We held that the omission to make the supervisors parties, was fatal to the proceeding and the mandamus fell. See Com. ex. vs. Moore, Treas., 6 W. N. C. 129; 5 Norris 445.
The present proceeding was a mandamus by the supervisors of Porter township against the county of Schuylkill to compel the treasurer of said county pay over to them the sum of $4,326.29, which had been collected by said treasurer from road taxes upon property in said township. The commissioners in their answer, .admit that the treasurer has in his hands the sum demanded, but aver that the sums were specially applicable under the Acts of 1869 and 1872, to the payment of the certificates held by Charlemagne Tower. The answer of the county treasurer is substantially to the same effect.
Subsequently Althouse, Miller and Jones, the special commissioners named in the Act of 1869, applied to the Court below for leave to interplead and make defence to said action. A similar application was made by Charlemagne Tower. Both applications were denied and the mandamus allowed.
*15 We need not discuss the application of the commissioners to interplead. In view of our explicit ruling in Thompson vs. The Com. supra, that they were no longer commissioners, and had no standing in Court, their attempt to intermeddle in the case was not entitled to consideration by the Court below.
The similar application made by Mr.'Tower was also properly refused. The second section of the supplement of the Act of 1872 to the said Act of 1869, provides that the road-taxes specially appropriated to the construction of the road shall be paid / by the township road-tax collectors and the county treasurers, to the said commissioners, who shall apply the same in payment of the expenses ot opening said road, and of the certificates issued for money advanced, &c. We held in Thompson vs. Commonwealth, supra, as before stated, that by the repealing Act of 1874, the duties of the commissioners fell back into the hands of the township supervisors. They take the place of the commissioners and are clearly entitled to receive and disburse the taxes specially appropriated by the Acts of 1869 and 1872, to' the payment of the certificates. It follows therefore, that the county treasurer must pay to the supervisors the money received from road taxes, and which under said acts has been directed to pay to the commissioners named in said acts. The county of Schuylkill, through its treasurer is a mere stakeholder of the fund in controversary. The law points out clearly what the treasurer shall do with his fund. To pay it over to Mr. Tower would deprive Porter township of the opportunity of setting up a defence to these certificates. We cannot know that the township has no defence until' it has had its day in Court. ' To have allowed Mr. Tower to interplead would have been a proceeding of at least doubtful propriety. There is no reason why Schuylkill county should be put to the expense of contest over this fund, and the mixing of municipal with private affairs is not to be encouraged. If Mr. Tower can arrest this fund in the hands of the county treasurer by his application to interplead, I see no reason why money in the hands of treasurers and other fiscal officers of the commonwealth, might not he attached. It was expressly ruled in Buckley vs. Eckert, 3 Barr 368, that this could not be done. It was there said by Sergeant, J., “Great public inconvenience would ensue, if money could be thus arrested in the hands of officers, and they made liar» *16 ble to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in Court, employ counsel' and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given.” The reasons here given why such a fund may not be attached are equally applicable to a motion to interplead or any proceeding which will stop a fund in the hands of a public officer.
The duty of the county treasurer to pay being purely ministerial, it cannot be said that a mandamus is not an appropriate remedy. But this writ is ez gratia, not of right. If the fund is paid to the township, the supervisors have no right to apply it to general road purposes. It is a trust fund specially appropriated by law to the payment of the certificates. The supervisors would be responsible upon their official bonds, for its appropriation according to law. But they may have given no bonds, or their bonds may be inadequate to cover the amount in controversy. It is out of the ordinary course of business for township officers to receive so considerable a sum at one time. While we may not have the power to order them to enter security for this money, we can deny the mandamus unless they do so and thus leave them to their remedy at law.
The judgment is affirmed, but the prothonotary is ordered not to send down the record until satisfactory evidence is produced before him that the supervisors of Porter township have filed in the Court below, a bond with two or more sufficient sureties, to be approved by the president, or one of the associate judges of said Court; said bond to be taken in the name of the commonwealth for the use of any parties in interest, in the sum of seven thousand dollars, conditioned for the application of said fund according to law.
The next proceeding was a bill in equity by the Philadelphia and Reading Coal and Iron Company against D. P. Thompson.
The plaintiff alleged that it is the owner ol certain lands in Porter township. That it is the holder of a certificate of indebtedness contracted in making a state road in said Porter township. That by the Act of Assembly of April 7th, 1869 and its supplement of February 27, 1872, the holder of such certificates of indebtedness is entitled to have the full amount of the road taxes assessed to him in said township appropriated in payment *17 thereof. That it presented said certificate to the said D. P. Thompson, 'the collector of road taxes for said township, but he refused to credit the lands of plaintiff with the amount of said certificate. That the said Thompson has levied upon and is about to sell a large amount of personal property belonging to plaintiff. The bill concludes with a prayer for a preliminary injunction to restrain defendant from selling said personal property. The preliminary injunction was dissolved on August 12, 1878, in the following opinion by
Pershing, P. J.
On the argument of this motion on 27 May, 1878, counsel for defendant demanded that “the whole proceeding should be dismissed, that no bill had been served, nor order made for service,” &c. It was answered that under an agreement between the parties the injunction awarded by the Court was not to issue formally. The agreement if in writing is not before us.
In the case of Commonwealth of Pennsylvania ex ■ rel, Tower vs. Thompson, 5 Nor. 446, of which the present case is a branch, the Supreme Court say: “Before the township (Porter) can be required to pay the certificates or to credit the taxes upon them it must have an opportunity to defend which can only be done by making the supervisors parties. The township may or may not have a defence. "We cannot anticipate this and therefore will decide no question in this proceeding which it would be entitled to raise in a suit against the supervisors.”
The bill in equity is based on the refusal of the defendant to credit certain taxes on certificates of indebtedness described in the bill. The decision of the Supreme Court covers this precise question raised and compels a dissolution of the injunction.
And now, Aug. 12, 1878, preliminary injunction dissolved.
Tower holding a number of the certificates of indebtedness then brought suit against Porter Township. The questions of fact whether there was any fraud in making the road was left to the jury. Tower proved that part of the road was made; that the money for which the certificates were issued was advanced to the Commissioners, and that he was an owner of lands through which the road was constructed. Defendant proved that Tower did not pay more than about $75 a year for road taxes. The case was tried March 28th, 1881. The following extracts are from the charge of the Court, per
*18 Walker, J.
Gentlemen of the Jury. — This is an action brought by the plaintiff against Porter Township to recover the amount of eleven certificates of various sums of money advanced by the plaintiff to the State Road Commissioners, appointed under an Act of Assembly, and authorized to lay out a state road for Porter Township, which said sum of money it is alleged was advanced by the plaintiff, and expended by the Commissioners in opening and constructing the said road. The claim of the plaintiff upon these certificates, with interest thereon, as appears by a statement, amounts to $38,882.^.
Under an Act of Assembly, approved the 7th day of April, 1869, (P. L., 738,) D. B. Althouse, Preston Miller and W. W. Jones were appointed commissioners, who, or a majority of whom, after being first duly sworn or affirmed to discharge the duties enjoined by the Act upon them with fidelity and impartiality, were to examine the ground and view, lay out and distinctly mark upon the best ground, and to the best advantage a state road to begin at a point near and a little west of the old Keffer tavern stand, in Porter Township, Schuylkill County, and to run thence westwardly by the nearest route, and by the best grade down along the mountain on the north side of Williams Valley through said Porter Township, and on to the town of Williamstown, in Dauphin County. And the said commissioners were directed and required to make out two reports and drafts of said road and dejiosit one in the office of the clerk of both Dauphin and Schuylkill Counties.
The commissioners were also empowered to open and construct the road at the expense of the individuals and companies owning or occupying lands through, or contiguous, or adjacent to which the said road shall be laid out, and to embrace in Porter Township, all lands north of the road up to the line of said township, provided the expense of opening this road were not to exceed a greater rate of assessment than that assessed upon the lands of others in the said township.
On the 27th of February, 1872, (P. L. 171), a supplement to this Act was passed, which authorized the commissioners, in place of the supervisors, to take charge of the opening and construction of this state road and to contract for it in portions or sections of an eighth of a mile each.
*19 The second section provides that any individual or company liable to the expense thereof under said Act, who has heretofore advanced or expended any sums, or shall hereafter advance to the said commissioners, or a majority of them, any sums to and for the opening and construction of the road, or any portion or piece thereof, shall be credited with the same, and shall be entitled to, and shall receive from the commissioners, or a majority of them, a certificate of the sums so advanced and expended,' and each and all of said sums shall be repaid on such certificate with interest.
The-Act of the 9th of June, 1874, (P. L., 306), repealed the third section of the Act of 1869, and the Act of 1872, and, therefore, changed the remedy of the plaintiff without interfering with his right of recovery. (Hickory Township Road, 7 Wr., 139.)
It did not affect the contract of those advancing money on the pledge of the fund appropriated to pay the certificates. (Thompson vs. Commonwealth, 31 P. F. S., 314.)****** *
The plaintiff has also offered in evidence certain deeds from Peter W. Sheafer and wife and William H. Yohe-and wife, date d the 21st of March, 1867, and the 17th of February, 1869, duly recorded for lands in Porter Township which have been assessed and taxes paid by plaintiff.
It is also in evidence that the state road runs through these properties in Porter Township.
This is offered to show that Mr. Tower was the owner of land made subject to taxation for the making of this road under the provisions of the Acts of Assembly of 1869 and 1872. * * * *
April 2nd, 1881, Verdict for plaintiff for $38,882.74, same day judgment upon the verdict. The Township of Porter then took a writ of error to 164 January Term, 1882, and assigned numerous errors among which were the answers to the following points by defendant.
“4th. That the Acts of ’69 and ’72 so far as they relate to lands in Porter Township, and to the exception of certain lands in said • township from taxation for general township purposes, are onerous, oppressive and unequal, for the reason that they throw the burden of taxation, and the cost of the maintenance of the general expenses of the township, and the opening and construction of other roads on the other lands in such township, and are, therefore, unconstitutional and void and the plaintiff cannot recover. Answer. *20 "We decline to affirm this point. Kirby vs. Shaw, 7 Harris 258. City vs. Field, 8 P. F. S., 320. Weber vs. Reinhard, 23 P. F. S., 370. Allentown vs. Henry, 23 P. F. S., 404.
The fifth point was in substance that the Commissioners could not receive advances in money from individuals, but only from collectors or county treasurers. The Court declined to 'affirm it.
The sixth point was in substance that the Acts of 1869 and 1872 do not make the township of Porter liable in its character as a municipality for advances for constructing the road. The Court declined to affirm it.
The eighth point was in substance that as Tower did not have to pay more than $75 a year for road taxes, the payment by him to the road commissioners of $29,000 was in no sense an advance of taxes as contemplated by the act and plaintiff cannot recover. The Court declined to affirm it.
The tenth point was in substance that plaintiff was not entitled to recover more money than the township had collected from taxes applicable to pay these certificates; and as plaintiff had not shown that the township had collected anything, he could not recover. The Court declined to affirm it.
Hughes & Farquhar and D. B. Green, Fsqrs., for plaintiff in error, cited Washington avenue, 19 Smith 352. Hammet vs. City of Philadelphia, 15 Sm., 146, and Seely vs. City of Pittsburg, 1 Norris 360, as to the unconstitutionality of the Acts of 1869 and 1872.
They cited Section Second of Act of 1872 to show that the Commissioners could not receive money advances directly from land owners, but only through the township officers; that this was the intention of the legislature in order to provide a check upon the Commissioners who had given no security.
That the payment of $29,000 to the Commissioners by Tower was really a loan which the Commissioners were not authorized to make even under pretense of an advance of taxes; the amount being so disportionate, that the doctrine of “Wager Bolides” as. laid down in Commack vs. Lewis. 15 Wallace 647 applies.
That the Act of Assembly imposes the burden of the expense of constructing this road on certain lands in Porter Township and Dauphin County and not on the township, and therefore the township was not liable in its municipal character.
*21 That as the Act applies the taxes of ■ certain lands to the payment of the certificates Tower could not recover more than the township was shown to have received.
C. Tower, Jr., S. H. & G. R. Kaercher, James & J. W. Ryon for defendant in error argued that by the Act of 1869, the road commissioners were to lay out the road and the Supervisors were to construct it and each township was to pay for its own portion out of taxes on certain lands. This fixed the liability of the township and the Act of 1872 altered the prior Act so as to give to the Commissioners the power to construct the road, but did not alter the liability of each township to pay for its own portion. They then cited the same authorities they had cited in Schuylkill County vs. Porter Township ante on page 12 as to the constitutionality of the Act to lay out a State road and as to impossibility of altering or impairing Tower’s rights and also the opinion on page lJ^ ante. The Supreme Court on May 15, 1882, affirmed the judgment of the Court below in the following opinion:
Per Curiam.
This controversy has been before this Court on three former occasions in different shapes. The parties following the instruction heretofore given, have adopted what is beyond all question the proper remedy. The constitutionality of the Act of Assembly, we think very clear, under the former decisions of this Court.
There is uothiug like special taxation for benefits. The taxpayers are not parties complaining. The whole question of fact in the case, as to the fair and bona fide carrying out of the provisions of the law was fairly submitted to the jury. It is to be hoped that this litigation will now come to an end.

Interest reipublicae ut sit finis litium.

Judgment affirmed.
The next proceeding was an appeal by Henry Rowe from the settlement of the township auditors to the Common Pleas of Schuylkill County ; the facts of which case appear in the opinion of the Court delivered June 18, 1883, by
Pershing, P. J.:
By the Act of April 7th, 1856, for the making of a State road in the Counties of Dauphin and Schuylkill, (P. L. 738,) it was *22 inter alia, provided that all road taxes assessed upon the lands, and the property thereon, through, or contiguous or adjacent to which the said road should run, and this to embrace also in Porter Township all the lands north of the road up to the north line of said township; together with such sums as should be advanced for that purpose by individuals and companies, should be appropriated and applied by the supervisors of the respective townships to the opening and construction of said State road, and to no other purpose till said road was made in good order for the travelling public.
The Commissioners named in the act issued certificates to a large amount for moneys advanced to them in the construction of the road. In addition to this legislative appropriation of the taxes, it is a part of the history growing out of this legislation, and made a part of this case, that the Supreme Court directed that the taxes collected from the lands mentioned in the Act should be kept intact as a fund for the payment of the certificates issued by the Commissioners till the liability of the township for the payment of such indebtedness was determined.
The appellant was the Treasurer of Porter Township. On the 28th day of August, 1878, he was paid by theP. & R. Coal and Iron Co., by a check to his order on the Farmers’and Mechanics’ Bank, of Philadelphia, the sum of $4,603.38 road taxes assessed to said corporation in Porter Township, for the years 1875 and 1876. On the same day, out of the money received by him for this check from a bank in Pottsville, the appellant paid to two attorneys the sum of'$1,000 each for professional services rendered said township, they stipulating to submit the question of their compensation to this Court should the township auditors not voluntarily allow the amount receipted for to the Treasurer. At the settlement made by the auditors in April, 1879, they charged the Treasurer with the taxes received from the P. & R. C. & I. Co., and refused to allow him a credit for the $2,000 paid to counsel. From this decision of the township auditors the Treasurer at once appealed to this Court.
Subsequent to these proceedings, viz: On April 2d, 1881,0. Tower recorded a verdict in this Court for $38,822.74 against said Township of Porter, on certificates issued by the Commissioners authorized to construct the State road by the Act of 1869. On *23 a writ'of error issued from the Supreme Court the judgment of this Court was affirmed and the liability of the township fixed.
Should the settlement made by the auditors be reversed ? It does not appear that they in any respect exceeded the judicial powers wffiich it has been repeatedly decided a Board of. Auditors, county or township, has the right to exercise. On the other hand, they seem in their action to have been governed by a regard for the strict requirements of the law. The Act of 15th April, 1834, require of the Township Treasurer that “he shall pay all moneys received by him, from taxes or otherwise, on orders drawn by the Supervisors of the township; and he shall annually state his accounts, and lay the same, together with the vouchers, before the township auditors for settlement, according to law.” And these accounts the auditors at their annual meeting are to “audit, settle and adjust.” (Purd. Dig., 1,403-4, pl. 25, 31.) The Act of 17th February, 1859, (P. L., 51) “to secure stricter accountability of certain public officers in Schuylkill County,” provides, Sec. 7, that no order issued upon any Township Treasurer shall be valid unless signed by the Supervisors, or Supervisor if only one, and is attested, numbered and registered by the township clerk. It must contain a distinct statement for what consideration it was given, and in addition the clerk must write the word “registered” on the face of the order, with the page of the register on which it is entered. And it is expressly enacted that “no order issued by any other officers in any other manner than therein provided for, shall be paid by Treasurer or be held valid and binding on any township.” If the Court in this case gives its sanction to the act of the Treasurer in disregarding every provision of the law, it does not need the ken of a prophet to predict that the time will soon come when every barrier intended for the protection of the treasury of this and other townships will be swept away, and the taxpayers left without remedy.
That the appellant may have paid the money in ignorance of the law, which is not to be supposed, will not authorize us to relieve him. In the Commissioners of Lycoming vs. the County of Lycoming, 10 Wright, 496, it was held that Commissioners who directed the payment of certain costs before the county had become legally fixed for their payment, were personally liable for the amount, and that it was the duty of the county auditors to *24 charge them with the money thus appropriated. The case in hand is stronger against the appellant because it is shown by the evidence that the money which he paid to counsel, without any order having been drawn upon him for that purpose, was derived from taxes upon the lands mentioned in the Act of 1869, which •were appropriated by that Act, supjflemented by the order of the Supreme Court, “to be used for no other purpose” than the construction of the State road by that Act authorized.
To the suggestion that this may be a case of individual hardship, we can only say, in the language of Mr. Justice Agnew, in a somewhat analogous controversy, “experience has shown that a faithful administration of the law is productive of greater public ’advantage, than to suffer it to be turned aside by exceptional cases.” The same judge said, (10 Wright 496, supra,) “There can be no doubt not only of the power but of the duty of the auditors to take notice of illegal disbursements of the public funds, and to charge the officer who is guilty of misappropriation. It is the only protection the people have against the illegal acts of those who have charge of their pecuniary interests; and the greater complaint is that the auditors too frequently omit their duty in this respect.” The appeal is dismissed at the cost of the appellant.
Rowe then brought suit against the township; a summons in case being issued on July 21, 1883.-. The case was stated Wm. R. Smith, for the use of Henry Rowe vs. The Township of Porter. Defendant plead non assumpsit, payment, payment with leave, set off, and non assumpsit infra sex annos. The suit was for counsel fees while engaged in the foregoing litigation. The township had employed Smith year by year at a stated salary of $50, commencing before this litigation commenced, and ending in 1879 ; but what services were to be rendered were not specified. From 1872 to 1879 Smith received his salary and expenses. There was some evidence that this salary was only for general advice, and so considered by the Township Treasurer, but no evidence to show that the Supervisors had so considered it. That the Township Treasurer agreed that he should be paid when the litigation was ended. There was evidence to the effect that other lawyers were employed by the year, who got as big a salary as Mr. Smith and were paid extra for their services in the State road case. There *25 was testimony that the services were worth $1,000 ; also the opinion of lawyers that when an attorney is employed by the year, it is only to give advice and suits tried in Court, &c. are to be paid for extra. There was other testimony that Smith was to act all through this litigation. . •
The Court in their charge left the question of the value of the legal services to the jury ; and also the question whether his salary was to pay him for all his services or merely for general advice. Among the points put to the Court was the following by the plaintiff: “ If the jury believe that fm. R. Smith was employed by the township to test the question of the liability of the Township of Porter to pay for the State road, then, and in such case the statute of limitations would not begin to run until after said question had been finally determined or Mr. Smith had ceased to render services.” Answer: We affirm that, if you find the facts as stated in this point.”
The following points were put by the defendant: “ That as Wm. R. Smith was employed by the year and has shown no other contract for the payment of services than a yearly salary, he is not entitled to recover in this suit. Answer: We leave this question to you as one upon the evidence. We have already said to you, that if he made a contract for so much per year and that ■was to cover all the services in Court and out of Court, he would be bound by it. If you find the contract was simply as I have said for advice of counsel and did not include trials in Court, then it would be for you to determine what other services he rendered, and what they were worth.” ■
“ If the jury believe that there was a settlement in April, 1878, between the township and Smith ; and Smith the plaintiff, was paid for the year 1879 $70; $50 for the township and $20 for the school district, and made no claim for any other services up to that time, that settlement was binding and the jury can include no services prior to the date of settlement, to wit: 9th of April, 1878, and if he agreed to do the business of the township for the year 1878 and 1879 for $50, the evidence was that he was paid that, and the verdict should be for the defendant. Answer: “We affirm this, leaving you to find the facts as stated here; that is, that there was a settlement at that time of Smith’s claim against the township, not merely a *26 settlement for his services under salary as counsel for the township, but including all the services which he had a right to claim for, from the township. If his contract was that he was to give all those services for that compensation, that would be the end of it.”
The jury rendered a verdict for the plaintiff for $1,295.00. The township took a writ of error to No. 15, July Term, 1884, and assigned for error inter alia the answers of the Court to the foregoing points. J. W. Moyer and James Ryon, Esq., for plaintiff in error argued that the settlement in 1878 was conclusive and barred this claim. Darlington vs. Taylor, 3 Grant, 195. Porter vs. Patterson, 3 Harris 229. Sergeant vs. Ewing, 6 Casey 83. Johns vs. Lantz, 13 Sm. 324. McClelland vs. West, 20 Smith 183. Tennent vs. Dewees, 7 Barr 305. The contract to perform legal services embraced trials in Court. That the statute of limitations barred all claims for services rendered before July 21,1877.
G. F. Farquhar and F. W. Bechtel, Fsqs., for defendant in error.
There were seven mandamus cases, two bills in equity, one action of debt and twenty-one actions on the certificates in which Smith took part, besides the cases in the Supreme Court. The questions raised in this case were fairly left to the jury by the Court below, and the Supreme Court will not reverse when there is any evidence whatever to sustain the verdict.
The Supreme Court on May 5, 1884, affirmed the decision of the Court below in the following opinion by
Paxson, J.:
It is not denied that the plaintiff below rendered the services to the township for which this- suit was brought, nor that the services were worth the amount charged therefor, and if there had been such denial, the verdict of the jury settled both questions in favor of the plaintiff’. Whether he was bound to render those services in consideration ot the annual salary paid him by the township was one of the questions of fact raised upon the trial below, and has also been settled in favor of the plaintiff by the verdict. There was ample evidence to submit to the jury upon this point, and if the verdict was wrong in this respect, which is *27 by no means clear, it is not our province to correct it. The learned judge submitted this question to the jury under proper instructions. Whatever reason the township may have to complain of the verdict, it has no ground to object to the rulings of the Court. Judgment affirmed.